IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEANTHONY T. WINSTON, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18-cv-00226 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CARL MANNIS, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff LeAnthony T. Winston, a Virginia inmate proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983, naming Warden Carl Mannis, Sergeant Kirby, and Officer O'Fannon, all staff at Wallens Ridge State Prison (Wallens Ridge), as defendants. Winston alleges that the defendants held him past his release date, denied him access to telephones, grievances, and the courts, and that Warden Mannis failed to correct these and other problems. Defendants filed a motion to dismiss, and the motion is ripe for disposition. After reviewing the pleadings, the court concludes that defendants' motion must be granted.

I. BACKGROUND

Winston alleges that upon arriving at Wallens Ridge on February 13, 2018, he was "discriminated against" when the Assistant Warden had Winston placed "in the hole" and all of his privileges removed without a hearing "because of [his] religious beliefs." The alleged discrimination continued when a unit manager continued to hold Winston in the hole, even after bed space opened up" and people who were approved after him were released before him. Winston claims that he spoke with defendant Warden Mannis about "the issue," the fact that he was "acting as [his] own lawyer," and how the "restrictions were affecting [his] case." He also showed Warden Mannis "proof" that he was being "held past his court ordered released date."

Winston states that Warden Mannis gave Winston "one legal call to check on a deadline, but made no move to help [him with his] other issues." He further alleges that, "despite seeing [Winston] struggling, [Warden Mannis] still made no move to stop the discrimination," and that even while "knowing [Winston's] situation, [Warden Mannis] let three weeks pass without providing [Winston] access to the phone," which resulted in one of Winston's cases being dismissed. (Compl. 5, Dkt. No. 1.)

Winston also alleges that on March 11, 2018, after being notified that he had denied Winston telephone privileges for two days while "everybody else" got to use the telephone, defendant Officer O'Fannon denied Winston access to the telephone for a third day in a row. At approximately 3:00 a.m., Winston spoke with defendant Sgt. Kirby "about [his] issue" and requested a grievance. Winston states that Sgt. Kirby "refused" to give him a grievance form. Winston also alleges that he has been denied meals, outside recreation, showers, and the opportunity to clean his cell "for weeks," but does not connect these allegations to any of the named defendants or any person. As relief, Winston seeks $250,000 and an injunction "ordering that prisoners can't be punished for religious issues." (*Id.*)

In response to defendants' motion to dismiss, Winston asserts that he has had "several cases delayed and dismissed." In support of this assertion, Winston states that "each defendant was notified that [Winston] was acting *pro-se* and that [he] had court deadlines, [and] that [he has] to use [his] family to seek counsel and do legal research since [he] wasn't allowed to have the required access to a law library, or assistance of other prisoners." He also alleges that prisoners are only allowed to use the telephone "after business hours and only twice a month." (Resp. Opp. Mot. D. 2-3, Dkt. No. 41.)

Winston also asserts that he was placed in a "maximum security prison, based solely on [his] religious beliefs," and that his placement has denied him "equal opportunity employment" and good time credit earning. He does not describe how the defendants were involved in his prison placement. He further asserts that the Virginia Department of Corrections' (VDOC) grooming policy violates the First Amendment. However, again he does not describe how the defendants are involved with the creation or implementation of the grooming policy. Finally, he asserts that his "detailed description" of his prison conditions "were to be presumed actions of the defendants." (*Id.* at 4-5.)

## II. DISCUSSION

**A. Motion to Dismiss Standard**

Defendants filed a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must

be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## B. Held Past His Release Date

Winston argues that he is being held past his release date. However, as Winston has been advised multiple times in other cases, such a claim must be raised in a habeas petition and not in a § 1983 action.[1] *See Todd v. Baskerville*, 712 F.2d 70, 72 (4th Cir. 1983) (citing *Preiser v.*

---

[1] The court notes that Winston filed a state habeas petition raising this claim and the Supreme Court of Virginia found that his claim had no merit. *See* Dkt. No. 28-1. Further, this claim is also currently pending in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Virginia. *See Winston v. Clarke*, Civil Action No. 2:18cv00577 (E.D. Va. Oct. 30, 2018).

*Rodriguez*, 411 U.S. 475 (1973)). Accordingly, to the extent he is attempting to raise this claim in this action, the claim is dismissed.

**C. Access to Courts**

To the extent Winston claims that the defendants denied him access to courts, his claim fails because he has not established any injury resulting from the alleged denial. Inmates have a constitutional right to reasonable access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Bounds v. Smith*, 430 U.S. 817, 838 (1977); *Ex parte Hull*, 312 U.S. 546 (1941). The right of access to the court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, in order to state a constitutional claim of denial of access to the courts, a plaintiff must allege specific injury resulting from the alleged denial. *See Lewis*, 518 U.S. at 349 (holding that an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his non-frivolous legal claim had been frustrated or was being impeded). A plaintiff must make specific allegations as to the actual injury sustained. *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355) (inmate must show an "unconstitutional burden on his right of access to the courts" resulting in "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir.1993) (Prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access."). "Conclusory allegations are not sufficient in this regard." *Sewell v. Shearin*,

5

No. CV DKC-15-3040, 2016 U.S. Dist. LEXIS 152411, 2016 WL 6525615, at *16 (D. Md. Nov. 2, 2016).

In support of his access to courts claim, Winston alleges that he has had cases "delayed" and "dismissed," but he does not provide any specific facts concerning the type(s) of cases, the claims he raised, or how the defendants' actions caused the cases to be delayed or dismissed. Accordingly, Winston has failed to sufficiently establish any actual injury, and, therefore, the court will grant defendants' motion to dismiss Winston's complaint as to this claim.

**D. Access to Telephones**

To the extent Winston claims that Officer O'Fannon violated his federal rights by denying him access to a telephone for three consecutive days, his claim fails because an inmate has no federal legal right to use a telephone. *See United States v. Alkire*, 82 F.3d 411 (4th Cir. 1996). Accordingly, the court will grant defendants' motion to dismiss this claim.

**E. Access to Grievances**

To the extent Winston claims that Sgt. Kirby violated his federal rights by denying him a grievance form, his claim fails because an inmate has no federal legal right to participate in grievance proceedings. *See Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Accordingly, the court will grant defendants' motion to dismiss this claim.

**F. Supervisory Liability**

Winston seeks to hold Warden Mannis responsible for the acts of staff at Wallens Ridge. The doctrine of *respondeat superior* does not apply in §1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). For supervisory prison officials to be held liable under § 1983 for constitutional injuries inflicted by their subordinates, an inmate must state facts showing that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct

that posed a "pervasive and unreasonable" risk of constitutional injury; (2) the supervisor's response to this knowledge was so inadequate as to show "deliberate indifference top or tacit authorization" of the offensive practices; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Winston makes no such factual showing and cannot use labels and conclusions to build actionable claims. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Moreover, Winston has not demonstrated that his constitutional rights were violated by the actions of which he complains. There can be no supervisory liability under § 1983 without a viable constitutional claim at stake. *Doe v. Rosa*, 664 F. App'x 301, 304 (4th Cir. 2016) ("There can be no supervisory liability when there is no underlying violation of the Constitution.").

Winston alleges that he told Warden Mannis about "the issue," but he does not clarify what "the issue" was. To the extent "the issue" refers to a violation of equal protection in his housing assignment, Winston's allegations are insufficient to state an equal protection claim and, thus, fail to state a claim of supervisory liability. To prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). Winston fails to allege any disparate treatment from those with whom he is similarly situated.

To the extent "the issue" refers to a First Amendment violation in regard to his housing assignment, Winston's allegations are insufficient to state a First Amendment claim and, thus,

7

fail to state a claim of supervisory liability. To state a viable claim under the First Amendment, a plaintiff must demonstrate that the defendant prison official's actions or policies place a substantial burden on his free exercise of his sincere religious belief. *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). Winston fails to allege a substantial burden.

To the extent "the issue" refers to a due process violation, Winston's allegations could potentially state a due process claim against a non-defendant, concerning his placement and continued confinement in "harsh" segregation conditions for months without a hearing; however, Winston has failed to establish that Warden Mannis's subordinate was engaged in conduct that posed a "pervasive and unreasonable" risk of constitutional injury. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984). Moreover, a plaintiff ordinarily cannot establish deliberate indifference by pointing to a single incident or isolated incidents. *Shaw*, 13 F.3d at 799 (citing *Slakan*, 737 F.2d at 373). Winston points to no other incident of a due process violation other than his own.

Winston also alleges that he told Warden Mannis that he was acting *pro se* and that the restrictions imposed upon him were "affecting" his case. The court has already determined that Winston's allegations fail to state an access to courts claim. Winston does not allege that Warden Mannis had actual or constructive knowledge that any of his subordinates were engaged in any other conduct which posed a pervasive and unreasonable risk of constitutional injury. Without a viable constitutional claim, Winston has failed to show that Warden Mannis is liable

8

as a supervisor. Accordingly, the court will grant defendants' motion to dismiss Winston's complaint as to these claims.

**G. Preliminary Injunctions**

Winston has also filed multiple motions seeking preliminary injunctive relief and documents in support thereof.[2] *See* Dkt. Nos. 5, 5-2, 16, 19, 30, 38, 42, and 44. Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing," that (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991). The movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*, *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused

---

[2] The court ordered defendants to respond to Winston's first motion, *see* Dkt. No. 24, and they did, *see* Dkt. No. 28. The court did not order defendants to respond to any of Winston's subsequent filings regarding preliminary injunctive relief, but defendants responded to his last motion, *see* Dkt. No. 45. Winston filed a motion for default judgment, arguing that the court should issue a preliminary injunction because defendants failed to respond as ordered by the court. *See* Dkt. No. 32. Inasmuch as defendants did respond, however, the court will deny Winston's motion.

9

by the wrong claimed in the underlying action." *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

In his motions seeking preliminary injunctive relief and supporting documents, Winston alleges that he has been held beyond his release date; has been housed with "violent individuals who have a lengthy sentence"; has been pressured to abandon his religious beliefs; was denied the ability to buy items from the commissary; was unfairly classified for housing based on his religious beliefs; was subjected to "much harsher" conditions than the "average prisoner"; was denied meals, recreation, and the ability to clean his cell; was beaten by staff and tortured for over twenty-one hours; was denied access to the grievance process and photocopies; had his litigation efforts "hindered"; had mail "screen[ed]"; had property taken from him without a hearing; had "evidence" stolen from him; was denied legal assistance; was denied "equal opportunity" employment, housings, and privileges"; was held in segregation without a hearing; was denied medical treatment; and was denied telephone calls.[3] *See* Dkt. Nos. 5, 5-2, 16, 19, 30, 38, 42, and 44. Winston requests that he be provided with security and supervision; that the constitution be upheld; that the Virginia Department of Corrections (VDOC) arrange for "qualified" employees to handle "time calculations"; that he get a "deprivation hearing"; $100,000.00 in compensatory damages;[4] that a restraining order be issued "against all [V]DOC agenc[ies] or employees"; and that he be given access to certain security videotape footage. *See* Dkt. Nos. 5-3, 16, and 19.

---

[3] The court notes that Winston also complains about the conditions of his incarceration prior to his arrival at Wallens Ridge.

[4] The court notes that damages generally are not an appropriate form of relief in a preliminary injunction motion. *See Hughes Network Sys. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693-94 (4th Cir. 1994).

10

As previously discussed, Winston's claim that he is being held past his release date is not properly raised in a § 1983 action, and, as such, the court cannot find that Winston has demonstrated a likelihood of success on the merits of this claim.

Winston's motion and supporting documents allege that he was denied commissary purchases, meals, recreation, the opportunity to clean his cell, photocopies, and medical treatment; he was beaten and tortured; his property was taken from him without a hearing; he was housed with violent offenders; he was denied equal employment, housing, and privileges; and his mail was screened, all by unnamed staff or non-defendants. However, Winston has failed to establish a relationship between the injuries claimed in the motion and the conduct giving rise to the claims against the named defendants in the complaint.

Finally, Winston alleges that he has been pressured to abandon his religious beliefs, has been unfairly classified based on his religion, he was placed and kept in segregation without a hearing; was denied access to the grievance process, had evidence "stolen" from him, and was denied access to a telephone. However, Winston has not clearly demonstrated that he is likely to prevail on the merits of these claims or that he is likely to suffer imminent, irreparable harm in the absence of preliminary injunctive relief. Winston does not describe how he was pressured to abandon his religious beliefs, how he was classified based on his religion, or what evidence was stolen from him. Nor does he explain how the named defendants were involved in these alleged actions. Further, the court has already discussed that Winston has no federal right to participate in the grievance procedure or use the telephone. Accordingly, the court will deny Winston's motions seeking preliminary injunctive relief.

III.  CONCLUSION

For the reasons stated herein, the court will grant defendants' motion to dismiss.[5] However, because Winston could cure the defects in his access to courts and supervisory liability claims through amendment of the complaint, the court's dismissal of these claims is without prejudice, and the court will give Winston the opportunity to amend the complaint.  *See Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015); *see, e.g., Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 723 F. App'x 241, 242 (4th Cir. 2018) (dismissing appeal and remanding case for amendment of complaint).

An appropriate order will be entered.

Entered: April 15, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[5] Winston also filed a "motion for declaratory judgment" pursuant to 28 U.S.C. § 2201, seeking $10,000 per month since July 28, 2017 (before he arrived at Wallens Ridge) and immediate release from incarceration.  *See* Dkt. No. 39.  He also asks the court to "declare" various rights of prisoners.  *Id.*  The court's authority to grant a declaratory judgment would come into play only if the plaintiff can demonstrate a right to relief on his substantive claims.  *Gaylor v. Dagher*, No. 2:10-cv-00258, 2011 U.S. Dist. LEXIS 12400, at *28, 3011 WL 482834 (S.D. W. Va. Jan. 14, 2011).  Inasmuch as the court has granted defendants' motion to dismiss Winston's complaint, the court also denies Winston's motion for declaratory judgment.